**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**JOHN DOE**                                                                              **PLAINTIFF**

**VS.**                                                     **CIVIL ACTION NO: 3:24-cv-547-HTW-LGI**

**JANE ROE**                                                                          **DEFENDANT**

_____

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE
COMPLAINT UNDER PSEUDONYM, TO PROCEED PSEUDONYMOUSLY,
AND TO FILE MATERIALS UNDER SEAL**

_____

Plaintiff files this memorandum in support of his motion pursuant to Fed. R. Civ. P. 5.2, L.U. Civ. R. 5.2, and L.U. Civ. R. 79 for leave to file his Complaint under a pseudonym, to proceed in this action pseudonymously, and to file under seal (or with redactions) any materials that would reveal the parties' identities.

## INTRODUCTION

Defendant has threatened to "publicly file" a lawsuit against Plaintiff alleging false claims of sexual misconduct that allegedly occurred years ago unless Plaintiff pays her millions of dollars.  Plaintiff, a celebrity and public figure, is therefore forced to file this lawsuit to prevent the irreparable harm that such a "publicly file[d]" lawsuit would have on his reputation, family, career and livelihood. However, filing under his name in the public docket would cause the same irreparable harm to Plaintiff's reputation and goodwill that he seeks to avoid through this lawsuit. The only way to prevent that irreparable harm is to allow Plaintiff to file his complaint under seal, to proceed pseudonymously, and to file any personally identifying exhibits under seal or with redactions sufficient to protect the parties' identities.

## FACTS

Plaintiff is a well-known celebrity and public figure who resides in Tennessee. Defendant worked professionally with Plaintiff as an independent contractor for approximately 15 years before she relocated from Tennessee to Mississippi in May 2020. Soon after moving to Mississippi, Defendant began demanding financial assistance from Plaintiff. Plaintiff acquiesced for some time, but when Defendant demanded salaried employment and medical benefits Plaintiff could no longer agree. When Plaintiff refused to provide additional financial assistance to Defendant, she responded with false and outrageous allegations of sexual misconduct against Plaintiff she claims occurred years ago.

On July 17, 2024, an attorney acting at Defendant's direction sent Plaintiff and others who work with Plaintiff a demand letter alleging a litany of sexual misconduct by Plaintiff over the years ranging from allegations of sexual "grooming," creation of a sexually hostile work environment, unwanted sexual touching, and sexual assault. Defendant also alleged a belief that Plaintiff planned to hire someone to murder her. Defendant's July 17 letter was the first time Plaintiff learned of these allegations, none of which has any basis in fact.

Defendant's July 17 letter threatened to "publicly file" a draft civil complaint against Plaintiff enclosed with the letter repeating the same fabricated allegations from the demand letter unless Plaintiff agreed to pay Defendant millions of dollars not to file the suit. The letter referred to various celebrity sexual misconduct lawsuits featuring multi-million dollar jury awards.

In a follow-up letter dated August 23, 2024, Defendant, through her attorney, offered to refrain from publicly filing her false and defamatory lawsuit against Plaintiff in exchange for a multi-million dollar payment. She threatened that if Plaintiff failed to meet this demand, he would face exposure of many millions of dollars "based on [his] net worth."

Defendant's allegations of sexual misconduct against Plaintiff are wholly untrue. Nevertheless, the public filing of these untrue allegations will substantially and irreparably damage Plaintiff's good reputation, his business, and his relationships with family and friends. Even though Plaintiff is confident the Court will find Defendant's false allegations to be meritless, the public disclosure of his name, Defendant's name, and Defendant's scandalous allegations alone will result in the irreparable loss of Plaintiff's goodwill and reputational harm in his industry. No amount of money damages could adequately reimburse Plaintiff for that loss of goodwill and reputational harm.

## ARGUMENT

Plaintiff should be permitted to initiate and proceed in this action under a pseudonym and file personally identifying materials containing Defendant's false and harmful allegations under seal because, among other reasons, Plaintiff filed this action to *prevent* the irreparable harm to his reputation, family, career and livelihood that would result from the public disclosure of Defendant's malicious and false statements.  Anything less than the relief requested in this motion will *cause* the irreparable harm this action was filed to prevent. The public's general interest in open judicial proceedings is substantially outweighed by the need to prevent the irreparable harm to Plaintiff if Defendant's false statements are disclosed to the public.

District courts often exercise their discretion in cases such as this, where the public filing of the parties' names will cause irreparable harm, to "accommodate a plaintiff's need to proceed anonymously through the use of a fictitious name." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). "The public has a common law right of access to judicial records," but "[t]his right of access, however, is 'no absolute.'" *Sealed Appellant v. Sealed Appellee*, 2024 WL 980494, at *2 (5th Cir. Mar. 7, 2024) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). Litigating under a pseudonym and sealing or redacting identifying information in cases such as

this is a commonly accepted practice in this Court. *See, e.g.*, *Doe v. Hood*, 2017 WL 2408196, at *1 (S.D. Miss. June 2, 2017); *Doe v. Univ. of Miss.*, 2021 WL 6752261, at *1–2 (S.D. Miss. Apr. 14, 2021). "'Every court has supervisory power over its own records and files,' and, when appropriate, courts may order that case documents be filed under seal." *Sealed Appellant*, 2024 WL 980494, at *2 (citations omitted).

Both the "pseudonymity" and the sealing/redaction analysis require "the court to balance the private and public interests." *Sealed Appellant*, 2024 WL 980494, at *3. "[T]here is 'no hard and fast formula for ascertaining whether a party may sue anonymously,' and "'[t]he decision requires a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Id.* (quoting *Stegall*, 653 F.2d at 186). Of course, the court should not engage in sealing on a wholesale basis, but, as the Fifth Circuit has explained, the standards for "the public's right to attend trials and the public's right to know the identity of the parties [are] not perfectly symmetrical." *Stegall*, 653 F.3d at 185. "Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Id.* Thus, the district court may not "appl[y] a standard that too narrowly define [s] the privacy interests that could justify sealing," and it must "consider whether alternative measures, such as redaction or pseudonymity, would … sufficiently protect the privacy interests at issue." *Sealed Appellant*, 2024 WL 980494, at *3. The parties in a "very private matter" such as this have a legitimate privacy interest in proceeding under a pseudonym. *Stegall*, 653 F.2d at 185.

Forty-five years ago, the Fifth Circuit identified "three common factors" present when pseudonymity was appropriate: (1) plaintiffs "challenge governmental activity," (2) "prosecution

of the suit compels plaintiffs to disclose information 'of the utmost intimacy,'" and (3) "plaintiffs were compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution." *Stegall*, 653 F.2d at 185 (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynn & Jaffee*, 599 F.2d 707 (5th Cir. 1979)). Just three years later, however, the Fifth Circuit made clear that it "would be a mistake to distill a rigid, three-step test for the propriety of party anonymity." *Id.* It held that these three factors are not "prerequisites to bringing an anonymous suit" and reversed a district court's denial of a pseudonym motion based on all three factors not being satisfied. *Id.* at 186. The Fifth Circuit reasoned that psuedonymity is appropriate in cases such as this involving a "quintessentially private matter," where "[a]lthough [they] do not confess either illegal acts or purposes," plaintiffs "by filing suit ma[k]e revelations about their personal beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior." *Id.*

Subsequent precedent makes clear that "[a] party need not prove all three [*Stegall* factors] to proceed anonymously." *Univ. of Miss.*, 2021 WL 6752261, at *1. Just this year in *Sealed Appellant*, the Fifth Circuit held that the district court abused its discretion in unsealing the case file and not protecting the parties' anonymity by "retroactively pseudonymizing the record." *Sealed Appellant*, 2024 WL 980494, at *3. That case, like this one, involved allegations of sexual misconduct. *Id.* at *1. The district court unsealed the case on the basis that there was nothing "lewd or graphic" in the record, but the Fifth Circuit held that "whether material is 'lewd or graphic' is underinclusive." *Id.* at *2. The Court held that the district court should have considered whether the filings "'might have become a vehicle for improper purposes,' such as when records are 'used to gratify private spite or promote public scandal.'" *Id.* (quoting *Nixon*, 435 U.S. at 598). It held the "district court must also consider whether alternative measures, such as redaction or pseudonymity, would instead sufficiently protect the privacy interests at issue."

*Id.* In short, the "district court … applied a standard that too narrowly defined the privacy interests that could justify sealing, and it failed to explain why any other asserted privacy interests did not outweigh the presumption of public access." *Id.* And unlike in this case, only one of the three factors—"prosecution of the suit compelled plaintiffs to disclose information 'of the utmost intimacy'"—was present. *Id.*

Plaintiff has a compelling privacy interest in proceeding anonymously and filing any documents that would reveal his identity under seal or with redactions sufficient to protect his identity. Two of the three *Stegall* factors as subsequently interpreted by the Fifth Circuit are present here. First, Plaintiff's prosecution of the action compels disclosure of "information 'of the utmost intimacy.'" *Stegall*, 653 F.2d at 185. Like many other cases where this court permitted the parties to proceed under pseudonyms, the sexual misconduct allegations at the heart of this case are, of course, "very private, intimate relations," and "given the level of intimacy involved in the details of this case, [the parties'] right to privacy with regard to events described within the complaint outweighs the public's right to know [their] identity." *Univ. of Miss.*, 2021 WL 6752261, at *2 (quoting *Doe v. Univ. of Miss.*, 2018 WL 1703013, at *2 (S.D. Miss. Apr. 6, 2018)) (both cases ordering pseudonyms for accuser and accused in case involving alleged sexual misconduct).

The circumstances of this case compel pseudonymity even more than in other alleged sexual misconduct cases previously decided by this Court. *See Univ. of Miss.*, 2021 WL 6752261, at *2; *Univ. of Miss.*, 2018 WL 1703013, at *2. Plaintiff is a well-known and highly-regarded celebrity whose success, in both business and his personal life, is fueled by his public image and goodwill. Defendant knows this, and she is attempting to extort him by threatening to "publicly file" a lawsuit alleging untrue allegations of sexual misconduct and sexual assault unless Plaintiff pays her millions of dollars. As in *Sealed Appellant*, Defendant has shown she is

likely to use public filings in this cases as "a vehicle for improper purposes" including to "gratify private spire [and] promote public scandal." *Sealed Appellant*, 2024 WL 980494, at *2 (quoting *Nixon*, 435 U.S. at 598). Moreover, none of Defendant's allegations is true, but even the public filing of such allegations will substantially and irreparably damage Plaintiff's well-earned good reputation, his business, and his relationships with family and friends.

Second, Defendant accuses Plaintiff of criminal behavior, including sexual assault and potentially attempted murder. Just as in *Stegall*, Plaintiff does "not confess either illegal acts or purposes;" quite the opposite. *Stegall*, 653 F.2d at 186. But Defendant alleges Plaintiff assaulted her and may murder her, which is more than sufficient under this Court's precedent. *See Univ. of Miss.*, 2021 WL 6752261, at *2 ("Roe's sexual misconduct claims against him, if believed, may be construed by some to constitute criminal conduct"). These baseless allegations "invite[] an opprobrium analogous to the infamy associated with criminal behavior." *Id.* Even when Defendant's allegations are proven untrue, the "opprobrium" that will result from the public filing of Plaintiff's identity and Defendant's allegations will irreparably damage Plaintiff's well-earned good reputation, his career, and his relationships with family and friends.

Finally, as it pertains to privacy interests, the Court should consider the unique and dire circumstances under which Plaintiff files this lawsuit. The *reason* Plaintiff has filed this lawsuit is to *prevent* Defendant from "publicly filing" her untrue allegations of sexual misconduct against him. Plaintiff could either pay millions of dollars to prevent the irreparable damage that would result from Defendant publicly filing her untrue allegations or attempt to have this Court decide the issues in the case in a court of law rather than the court of public opinion. The circumstances of this case provide a compelling basis for allowing the parties to proceed anonymously until a jury decides the falsity of Defendant's allegations.

Conversely, there is little if any legitimate public interest in the disclosure of Plaintiff's and Defendant's identities. Defendant's allegations of years-old sexual misconduct are wholly untrue. The public has no legitimate interest in allegations of sexual misconduct that have no basis in fact and that are made for the sole purpose of extortion.  The public's interest in the disclosure of the parties' identities would be nothing more than a prurient curiosity to uncover untrue, salacious gossip.

Permitting the parties to proceed under pseudonyms and sealing or redacting certain documents that reveal their identities is narrowly tailored to protect the parties' privacy and other interests without unduly interfering with the public's right to an open trial. As the Fifth Circuit explained in *Stegall*, there is a stark difference between eliminating "the public's right to attend trials" and disclosing to the public "the identity of the parties." *Stegall*, 653 F.2d at 185. "Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Id.* As in *Stegall*, *Sealed Appellant*, and the *University of Mississippi* cases, protecting the compelling privacy and other interests of the parties through mutual pseudonymity in no way precludes the public from following the court's resolution of the claims in the lawsuit. By contrast, pseudonymity is the only way to protect Plaintiff's interests. Anything less will irreparably damage Plaintiff's reputation, goodwill, career, and family.

Finally, as the Fifth Circuit instructed in *Sealed Appellant*, "courts should reevaluate pseudonymity as the litigation moves along." *Sealed Appellant*, 2024 WL 980494, at *3. There are compelling reasons to protect the identities of the parties at this stage of the litigation. If those reasons erode as "litigation moves along," the Court may then order disclosure of the parties' identities as it deems appropriate.

## CONCLUSION

For the reasons discussed above, an order protecting the parties' identities from disclosure is warranted and necessary. Plaintiff filed this case to prevent the irreparable damage he will suffer if Defendant's false allegations of sexual misconduct are disclosed to the public. Nothing short of anonymity will protect Plaintiff from that irreparable harm, and that impending irreparable harm substantially outweighs the public's interest in disclosure of untrue allegations of long-ago sexual misconduct against the Plaintiff. Thus, Plaintiff respectfully requests leave to file his complaint under pseudonym and to file under seal (or with redactions) any materials that would reveal the parties' identities.

Dated:  September 13, 2024.

Respectfully submitted,

**JOHN DOE**

By:  */s/ M. Patrick McDowell*
        M. Patrick McDowell,
        One of His Attorneys

OF COUNSEL:

R. David Kaufman, MSB No. 3526
dkaufman@brunini.com
M. Patrick McDowell, MSB No. 9746
pmcdowell@brunini.com
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
P.O. Drawer 119
Jackson, MS 39205
Telephone: (601) 948-3101
Facsimile: (601) 960-6902