**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**JOHN DOE**                                                               **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO.: 3:24-cv-547-HTW-LGI**

**JANE ROE**                                                              **DEFENDANT**

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO PROCEED UNDER A PSEUDONYM**

**WATSON & NORRIS, PLLC**

Louis H. Watson, Jr. (MSB#9053)

4209 Lakeland Drive #365
Flowood, MS 39232-9212
Phone: (601) 968-0000
Fascimile: (601) 968-0010
louis@watsonnorris.com

**WIGDOR LLP**

Douglas H. Wigdor (*pro hac vice*)
Jeanne M. Christensen (*pro hac vice*)

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
jchristensen@wigdorlaw.com

**HB ADVOCATES PLLC**

Hayley Hanna Baker (*pro hac vice*)

1831 12th Ave. S.
Nashville, TN 37203
Telephone: (615) 505-3260
Email: hbaker@hb-advocates.com

*Counsel for Defendant*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ................................................................................................. 4

    I.      The Parties ........................................................................................ 4

    II.     Mr. Doe's Complaint Contains No "Facts" ...................................... 5

ARGUMENT ..................................................................................................... 12

    I.      Fifth Circuit Standard for Use of Pseudonym ................................ 12

    II.     No Court Has Granted Anonymity to a Party Accusing a Sexual Assault Litigant of Defamation ........................................................ 13

    III.    Application of *Stegall* Factors ........................................................ 14

    IV.    Mr. Doe Does Not Meet the *Stegall* Factors ................................ 16

          A.    *Stegall* Factors One and Two Weigh Against Pseudonymity ................... 17

          B.    *Stegall* Factor Three ........................................................ 21

    V.     Plaintiff's Request to File Under Seal or with Redactions Must be Denied ......... 22

CONCLUSION .................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                        <u>Page(s)</u>

*Coker v. Georgia*,
  433 U.S. 584 (1977)............................................................................................. 4

*DL v. JS*,
  2023 WL 8102409 (W.D. Tex. Nov. 21, 2023) ........................................... 17, 21, 22

*Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*,
  2022 WL 17070549 (M.D. La. Nov. 17, 2022)......................................................... 19

*Doe v. Doe*,
  85 F.4th 206 (4th Cir. 2023)...................................................................................... 21

*Doe v. Doe*,
  2023 WL 115563 (E.D.N.C. 2023) .................................................................. passim

*Doe v. Hood*,
  2017 WL 2408196 (S.D. Miss. 2017)........................................................................ 16

*Doe v. Jackson Nat. Life Ins. Co.*,
  944 F. Supp. 488 (S.D. Miss. 1995)......................................................................... 19

*Doe v. Roe*,
  2023 WL 4562543 (D. Colo. 2023) .......................................................................... 15

*Doe v. Stegall*,
  653 F.2d 180 (5th Cir. 1981)......................................................................... passim

*Doe v. Trustees of Socorro Indep. Sch. Dist.*,
  2018 WL 11471569 (W.D. Tex. June 25, 2018) ...................................................... 19

*Doe v. Univ. of Mississippi*,
  No. 18 Civ. 138, 2018 WL 1703013 (S.D. Miss. Apr. 6, 2018).............................. 19

*Doe Williams v. Williams*,
  No. 24 Civ. 165 (DPJ) (ASH), 2024 WL 2805642 (S.D. Miss. May 31, 2024) ...................... 18

*Doe v. Univ. of Mississippi*,
  No. 21 Civ. 201 (DPJ) (FKB), 2021 WL 6752261 (S.D. Miss. Apr. 14, 2021)................. 19, 21

*June Med. Servs., L.L.C. v. Phillips*,
  22 F.4th 512 (5th Cir.  2022)........................................................................ 13, 23, 24

*Kamakana v. City & County of Honolulu,*
   447 F.3d 1172 (9th Cir. 2006) ................................................................. 23

*Latinos for Trump v. Sessions,*
   2021 WL 4302535 n.1 (W.D. Tex. Aug. 20, 2021) ................................... 17

*Nixon v. Warner Communications, Inc.,*
   435 U.S. 589 (1978) .................................................................................. 23

*North Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare,*
   781 F.3d 182 (5th Cir. 2015) ................................................................... 23

*Richmond Newspapers, Inc. v. Virginia,*
   448 U.S. 555  (1980) ................................................................................. 13

*Sealed Appellant v. Sealed Appellee,*
   2024 WL 980494 (5th Cir. 2024) ........................................................ 18, 19

*St. Paul Ins. Co. v. Trejo,*
   39 F.3d 585 (5th Cir. 1994) ....................................................................... 2

Statutes

28 U.S.C. § 2201 ............................................................................................ 1, 2

Cal. Civ. Code § 52.1 ...................................................................................... 2, 3

Cal. Civ. Code § 1708.5 ...................................................................................... 2

Cal. Code Civ. Proc. § 340.16 ............................................................................ 2

Rules

Fed. R. Civ. P. 5 .................................................................................................. 1

Fed R. Civ. P. 10 ........................................................................................ 3, 4, 5

Other Authorities

Anonymous Plaintiffs and Sexual Misconduct,
   50 Seton Hall L. Rev. 955 (2020) .......................................................... 17

Defendant Jane Roe ("Defendant" or "Ms. Roe") submits this memorandum in support of her opposition to Plaintiff John Doe's ("Plaintiff" or "Mr. Doe") motion pursuant to Fed. R. Civ. P. 5.2 ("Rule 5.2"), L.U. Civ. R. 5.2, and L.U. Civ. R. 79, seeking leave to file his complaint under a pseudonym, proceed in this action pseudonymously, and to file under seal or with redaction materials that would reveal the parties' identities. Dkt. Nos. 4-5.   For the reasons set forth below, Mr. Doe's motion should be denied in its entirety.

## PRELIMINARY STATEMENT

In an obvious attempt at gaming the judicial system, on September 13, 2024, Plaintiff John Doe filed a preemptive abusive declaratory judgment action. Dkt. No. 1.  With a draft of Ms. Roe's California sexual assault complaint in hand, Mr. Doe raced to this courthouse in an obvious attempt to further control and bully his sexual assault victim.  In so doing, Mr. Doe grossly misrepresents to the Court that there is "a justiciable controversy between the parties entitling Plaintiff to a declaratory judgment pursuant to 28 U.S.C. § 2201 that Defendant's allegations of sexual misconduct are untrue." *Id*. at 3.[1]  Mr. Doe commenced this frivolous action after he learned that Ms. Roe intended to hold him accountable for his conduct and sexual violence, that included *inter alia* (i) the time he walked out of his shower, naked and wet, and came towards Ms. Roe with an erection pointing directly at her, grabbed her hands and then forced them onto his erect penis and proceeded to tell her about his recurring fantasy that he would reach an orgasm and "come all over her face," specifically when she was "wearing her glasses;" (ii) the countless times he forced Ms. Roe to endure his fondling and groping of her breasts; (iii) and his sexual assault and rape of Ms.

---

[1]      Ms. Roe will be filing a motion to dismiss the complaint based on Mr. Doe's unquestionable misuse of the Declaratory Judgment Act, 28 U.S.C. § 2201.  For the reasons that will be apparent, Mr. Doe commenced this action in violation of the standards set forth by the Fifth Circuit in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994).

Roe during a work trip to Los Angeles in 2019 that has left her physically, as well as emotionally, injured.

Mr. Doe utilized his multi-millionaire resources to preemptively commence this action after Ms. Roe, a victim of sexual assault and rape, believed that Mr. Doe would honor agreements by counsel to discuss potential resolution confidentially, and thus engaged in settlement discussions and shared her California complaint that Ms. Roe's counsel said would be filed if resolution could not be reached by September 13, 2024.[2] Instead, Mr. Doe commenced this action on September 13, 2024. Afraid that she would expose his unlawful sexual conduct, Mr. Doe improperly utilized the Declaratory Judgment Act in a desperate attempt to prevent the truth from coming out. By being the first to file in Mississippi federal court and asking the Court to permit him to proceed under a pseudonym, Mr. Doe hopes that he will dupe this Court into granting his alleged claims priority and prevent Ms. Roe from disclosing all of her relevant facts, including his identity, in her California complaint. Although it was Mr. Doe's hope to prejudice Ms. Roe this way, there is nothing preventing Ms. Roe from commencing her California action immediately and using his identity. Out of an abundance of caution, however, and because Ms. Roe respects this Court's authority to decide whether Mr. Doe can proceed under a pseudonym, she will wait until later this week to make sure there is no objection from this Honorable Court before filing her California action in this manner.[3] Mr. Doe also hopes his preemptive lawsuit will prevent a

---

[2]     This week, Ms. Roe will file her complaint against Mr. Doe in California asserting claims under the relevant California laws that are timely pursuant to California's Sexual Abuse and Cover-Up Accountability Act, AB 2777 because her claims are "based on conduct that occurred on or after January 1, 2009, and [are] commenced []after January 1, 2019," see Cal. Code Civ. Proc. § 340.16(b)(3). Ms. Roe's claims include *inter alia* those brought pursuant to Cal. Civ. Code § 1708.5, Cal. Civ. Code § 52.1, Cal. Civ. Code § 52.7, and Cal. Civ. Code § 52.4(c)(2).

[3]     It is respectfully submitted that Ms. Roe's agency as a survivor and her ability to hold Mr. Doe accountable for his predatory behavior should not be thwarted by the preemptive complaint presently before this Court. Further delay in filing the California action will not only cause Ms. Roe further emotional distress but it will also potentially prejudice her upcoming motion to dismiss. Under the Fifth Circuit's test

California court from adjudicating her claims under California's own laws, because he will continue his forum-shopping efforts to force Ms. Roe to litigate the California claims concerning sexual assault in California, in a court closer to Mr. Doe's Tennessee home.[4]

In exceptional cases, courts may permit plaintiffs to proceed under a pseudonym contrary to Fed R. Civ. P. 10(a) ("Rule 10(a)") which requires that a complaint "include the names of all the parties." In the sexual assault context, however, the use of "Jane Doe" is often granted to a sexual assault or rape victim who files claims against her perpetrator, under a pseudonym. The rationale for an exception to Rule 10(a) is because, as the Supreme Court has held:

**[S]hort of homicide, [rape] is the ultimate violation of self.**

*Coker v. Georgia*, 433 U.S. 584, 597 (1977) (emphasis added). Understanding this reality, countless courts have concluded that sexual assault *victims* should not be violated a second time by being forced to relive their trauma through the publication of their identities in civil actions. But Mr. Doe is not a sexual assault *victim*. He is an alleged sexual assault predator. Confoundingly, Mr. Doe believes that he is entitled to the same protection victims receive –not to prevent unnecessary re-traumatization, but rather, to maintain his celebrity "reputation." Not surprisingly, and discussed *infra*, the few courts presented with such an outrageous pseudonym request by the party being accused of the sexual violence have flatly denied it. In one of these cases, the United States District Court for the Eastern District of North Carolina held:

> It would be fundamentally unfair for [a] plaintiff to be able to "clear his name" and wield a potential judgement against [his accuser] to his advantage but hide under a shield of anonymity if unsuccessful.

---

in *Trejo*, the length of time between an abusive complaint under the declaratory judgment act is filed and Ms. Roe's filing of her action in California, is a consideration for purposes of the forthcoming motion to dismiss.

[4]    Mr. Doe has already succeeded in such legal procedure gamesmanship in a separate matter. We reserve all rights to provide the Court with information regarding this case *in camera*, should the Court request to know the details.

*Doe v. Doe*, 2023 WL 115563, at *3 (E.D.N.C. 2023).

For the multiple reasons below, Ms. Roe respectfully requests that the Court deny Mr. Doe's motion to proceed under a pseudonym, or in the alternative, to file pleadings on the docket under seal or in redacted form.

## **BACKGROUND**

### I.   **The Parties**

Ms. Roe is a professional make-up artist and hair stylist, who has worked in the music industry for more than thirty years.  Through her hard work, skill and dedication, Ms. Roe has performed styling for celebrities appearing in countless publications such as Rolling Stone, Vanity Fair, In Style, Esquire, and Nash Magazine.  Additionally, she has received numerous make-up and hair stylist credits in advertising campaigns involving top celebrities and brands, and for her work in television commercials, and films.[5]  Throughout her career, Ms. Roe has collaborated with many of the top professional photographers in the world.[6]  Because she resided in Tennessee most of her career, it is not surprising that at some point Ms. Roe was asked to do the make-up and hair styling for Mr. Doe, as well as his wife.  In fact, since 2005, Ms. Roe periodically has worked for Mr. Doe.

In his declaratory judgment complaint, Mr. Doe refers to himself as "a celebrity and public figure who resides in Tennessee."  Dkt No 1, ¶ 5.  He describes Ms. Roe as "an independent contractor" with whom he "worked professionally … for approximately fifteen years before she relocated from Tennessee to Mississippi in May 2020."  *Id.,* ¶ 6.[7]  Mr. Doe provides no other factual allegations in his complaint – much less facts to support why he needs a drastic exception

---

[5]     Because of Mr. Doe's preemptive and improper filing, Ms. Roe is prohibited from disclosing to the Court many of the relevant background facts about her work for Mr. Doe, and her years of successful work for others, including household names and industry leaders, that would help place her claims in context.  Of course, this is exactly what Mr. Doe hoped would happen.

[6]     Again, Ms. Roe is restrained from naming these individuals because of Mr. Doe's filing.

[7]     As Mr. Doe knows, she did not relocate to Mississippi until May 2021.

to Rule 10(a), other than to say that in his opinion, he has a "well-earned reputation as a decent and caring person," which is why if the sexual assault allegations are disclosed, he says it would create "unavoidable damage to his family." *Id.,* ¶ 12.  This is Mr. Doe's entire explanation for why he needs Court intervention to judicially declare that Ms. Roe's allegations against him are false. Our civil court system is designed to resolve disputes and provide injured parties a means of redress.  It is supposed to be a level playing field.  The system is not in place to allow wealthy wrongdoers the ability to run work-arounds on sexual assault victims who attempt to hold perpetrators accountable.  This is precisely what Mr. Doe is asking the Court to help him do.

**II.**     **Mr. Doe's Complaint Contains No "Facts"**

As set forth in his Complaint and memorandum of law in support of his motion, Mr. Doe's spartan facts mention only that he is a public figure and celebrity, who has known Ms. Roe for fifteen years in connection with their "professional work."  Dkt. No. 5, at 2.  He says that after she relocated from Tennessee to Mississippi in May 2020 (which actually was May 2021), she demanded financial assistance from him, and while he "acquiesced for some time," there came a point where he could "no longer agree."  *Id.*  According to Mr. Doe, when he refused to give her "additional financial assistance," she then "responded with false and outrageous allegations of sexual misconduct against [Mr. Doe]" about events that "she claims occurred years ago."  *Id.*

Mr. Doe claims that he is the victim.  He says that but for his success and excessive wealth, Ms. Roe would not have accused him of what he characterizes as "sexual misconduct" in the first place.  Further, Mr. Doe says that "[e]ven though Plaintiff is confident the Court will find Defendant's false allegations to be meritless, the public disclosure of his name, Defendant's name, and Defendant's scandalous allegations alone will result in the irreparable loss of Plaintiff's goodwill and reputational harm in his industry."  *Id.* at 3.  Mr. Doe writes, "[n]o amount of money

damages could adequately reimburse Plaintiff for that loss of goodwill and reputational harm." *Id.* Incredibly, he contradicts all of the above when Mr. Doe acknowledges that Ms. Roe simply *could have* filed her own complaint, yet suggests that her counsel's contact with his counsel,[8] is evidence of extortion.

Mr. Doe's account omits all of the salient facts underlying the viable and serious claims that Ms. Roe has against Mr. Doe.  Notably, despite his contradictory statements that Ms. Roe could have filed in California without any notice to him, he fails to detail to this Court the allegations and claims set forth in Ms. Roe's 17-page (unfiled) complaint that he was in possession of before he commenced this action.   If he had, the Court would know more about the history of the professional relationship between Ms. Roe and Mr. Doe and how it came to be that she endured multiple instances of unwanted and horrific physical touching, as well as sexual assault and rape in the spring of 2019, all at the hands of Mr. Doe.

This history includes the following conduct, which is a sampling and certainly not all of the relevant underlying facts, which took place while Ms. Roe was working as a make-up and hair stylist for him:

- Mr. Doe often told Ms. Roe that he thought it was "hot" to see his wife be with another woman sexually, and implied that she could be the other woman.

- Mr. Doe often fondled, grabbed and kissed his wife in close physical proximity to Ms. Roe in a way that made Ms. Roe feel extremely uncomfortable.

- Mr. Doe openly talked about sexual subjects in front of Ms. Roe, including for example, cunnilingus.

---

[8]      In Ms. Roe's forthcoming motion to dismiss, the series of events as between Ms. Roe's counsel and Mr. Doe's counsel will be made clear to the Court.

- Mr. Doe regularly changed his clothing in front of Ms. Roe, and often purposefully exposed his genitals and buttocks to Ms. Roe, knowing that she would respond with a look of horror and disgust.

- In 2019, when she was at Mr. Doe's home to do his hair and makeup, Ms. Roe set up her supplies in his bathroom as usual, but while she was setting up, Mr. Doe started taking a shower in front of her, then came out naked with an erection pointing directly at Ms. Roe.  In shock, before she knew what to do, he grabbed her hands and forced them onto his erect penis; disgustingly, Mr. Doe said that he wanted her to "go down on him" and he said he had "fantasies of her going down on [him] with her glasses [on]" and him ejaculating "all over her face."

- Mr. Doe continued to repeat this particular sexual fantasy to Ms. Roe, as well as other fantasies he had about her.

- Mr. Doe often sent Ms. Roe sexually explicit text messages and pressured her to engage in sexting with him.

- On too many occasions to list, Mr. Doe would lasciviously stare at Ms. Roe's breasts and pressure Ms. Roe to open her shirt to allow him to physically touch her breasts for purposes of his arousal, after which Mr. Doe would then masturbate.

  - Regarding this arousal conduct, Mr. Doe said he would "take care of himself," and also told Ms. Roe he could not let her see because, "when I come, it's gallons."

- Mr. Doe told Ms. Roe that he had "fucked women in every corner of a hotel room" and also said that he had done so "on every surface" in a hotel room.

- In 2019, Mr. Doe brought Ms. Roe with him to Los Angeles to do his hair and makeup for an event.  They were the only two passengers on his private jet, which was unusual.  Once in Los Angeles at the hotel, Ms. Roe was shocked to learn that he had booked only one hotel room and she did not have a separate room.  Mr. Doe said he was going to "take a nap" and she would do it with him.  He grabbed her hands and pulled her onto the bed. Ms. Roe, less than 5 feet and about 100 pounds, was no physical match for Mr. Doe who is over 6 feet and weighs almost 300 pounds.

  - Mr. Doe physically overpowered her and subjected her to aggressive and painful sexual acts, that included his penis penetrating her against her will, that caused her permanent damage to her lower back, neck, and vagina;

7

- ▪ Mr. Doe's sexual fantasy to inhumanely handle Ms. Roe, including by holding her by her ankles and slamming her body with his, was a sexual assault that terrified, disturbed, and humiliated Ms. Roe.

- Subsequent to the rape, Mr. Doe brought Ms. Roe to Los Angeles again for five days during which he physically groped her body including her breasts; Ms. Roe was terrified to be in a hotel room with him again worried that he would force himself on her;

  - ▪ Her fears were justified as one morning when Ms. Roe went to Mr. Doe's room to do his hair and make-up, he was on the bed, face down, wearing loose shorts and holding his crotch, and made it clear that he wanted Ms. Roe to get into the bed with him; she narrowly escaped because he was running late for the event and other people were waiting to pick him up;

  - ▪ Nevertheless, Mr. Doe was angry and upset with Ms. Roe for not allowing him to sexually violate her.

- At times, Mr. Doe implied the groping would continue despite Ms. Roe insisting this was unwanted, for example, one time when he said while groping her, "next time we mess around," and Ms. Roe clearly said "no," he became visibly angry at Ms. Roe and left.

- After the sexual assault in Los Angeles, Mr. Doe increased the frequency of saying his sexual fantasies about her aloud, along with his physical gropings.

- Mr. Doe increased the frequency of his sexually charged conversations with Ms. Roe, and this included his repeated remarks about having a threesome with his wife in which he implied that Ms. Roe would be the third person, which Mr. Doe's wife overheard on at least one occasion.

- In or about May 2020, Mr. Doe, while speaking to his manager and wife directly in front of Ms. Roe talked about inventing a shampoo bottle that would double as a dildo. When Ms. Roe became uncomfortable and would not join in the conversation Mr. Doe became upset and slammed both of his fists onto the kitchen counter-top so forcefully that items were tossed around and he leaned in towards Ms. Roe and spoke in a threatening manner to her. Following this incident, she was so upset that Ms. Roe sent a text to Mr. Doe:

  - ▪ "I have thought a lot about the conversation of last Monday. I can't work in an environment where explicit sexual comments are made about shampoo bottles doubling as

dildos.  I mean you no harm, and if you truly value my work, I am happy to show up tomorrow and/or whenever you may need my services."

- After sending the text, she wrote him an email with the same content and copied Mr. Doe's wife on that email.[9]

- Additionally, during phone conversations in 2020, Mr. Doe said, *inter alia*, the following to Ms. Roe:

  - After she told Mr. Doe that she was upset he told his wife that Ms. Roe had seen his penis, Mr. Doe tried to minimize what was said, and said "Oh sweetheart – for one, I think I know  [wife's name] pretty well and she wasn't uncomfortable.  And I said you saw my stuff….that was it…we were talking about something and it just came up. Look, I'm worried you are over thinking this."

- After the sexual assault in Los Angeles, Mr. Doe told Ms. Roe about a mysterious text message he received in which a person claimed that Mr. Doe had **"ruined his life."**  In a phone conversation about this text, Mr. Doe said he had "no idea" who had texted him the message and suggested that he thought it was Mr. Roe's husband who had sent the text and tried to get her to reveal her husband's phone number.  Mr. Doe told Ms. Roe, "I never want to hurt anybody so that one [the mysterious text], it bothered me.  *It bothered me.*  I didn't know the number…."

  - Mr. Doe's claim about the unknown text in which someone purportedly said he had ruined his life, led to this exchange between he and Ms. Roe:

    - Mr. Doe: "And that killed me. It broke my heart, like god, *I never want to hurt anybody*.  So I was just – *I was scared to death*.  And then, you know, when they called you for work and you couldn't do it for two months I thought ohhhhhhhh craaaap.  That's what I thought.  Oh crap.  So, I was trying to seek you out to come talk … or whatever I needed to do but just uh I don't want to hurt anybody, man.  And just, I just felt bad."

- Ms. Roe said over the phone to Mr. Doe, "I want to make sure that that even though I've told you 'no,' that you're cool with 'no.' I mean 'no' as in 'no fooling around like we had done' – you are cool with that? Right?"

---

[9]     Each email, text message and content of telephone conversations placed within quotations herein, are direct quotes that Ms. Roe can verify to the Court, *in camera*, if necessary.

- Ms. Roe also said: "…when I saw you at the [redacted name of event] when you were doing the [redacted event], you were pretty upset with me." Mr. Doe replied: "Noooooo! I would never be upset with you…. look at it this way, okay? Look at it – the best way I can explain it is: **Me and you broke into a jewelry store and the second we broke the door we looked at each other and said this isn't right. But we already had broken the door. And so I think me and you get out and run and just hope that nobody ever finds out and just love one another and be friends. …. Is that fair?"**

Although Mr. Doe represents to the Court that everything Ms. Roe alleges in her complaint to be filed in California is "false," he will not be able to explain why he told her in 2020:

- "I work with the best. And I don't want to do something stupid that breaks this team up. So … I will do whatever I need to do or do whatever I don't need to do. But I just want to keep working with you…. but if you feel weird working with me, it's fine. We don't have to work together."

- In response, Ms. Roe said, "I've never – found myself in a situation that is… I just don't know that I'm going to be able to look up from … And I'm frankly, **I am a little frightened of you ... I really am."**

- Mr. Doe said, "Sweet baby! I'm so sorry. I can't imagine! **That makes me frightened of you!"**

- In this phone conversation, Ms. Roe explains that it would be "difficult" to work with Mr. Doe again, to which Mr. Doe said, "I am asking you to work together forever," and "you have a place here as long as you want it. I'm lucky to have you … I don't want this to go anywhere. And I don't want something that happened in the moment to screw the whole 20 years I've known you."

- Mr. Doe further said to Ms. Roe, "I love you to death honey, I don't ever want to see you hurt, or cry or want or need for anything … if you are down physically, if you need income, please let me know – I want to help. … if this situation happened a year ago, before me and you did anything silly with each other, the answer would've been the same. Yes, let me help…. I'm so sorry that we crossed a line. I don't want to hurt anybody. I really don't."

In addition to phone calls, there are multiple text exchanges between Mr. Doe and Ms. Roe that support the underlying allegations of her claims. As her soon-to-be-filed California complaint alleges, one day in 2020 when she was on site at a job to style Mr. Doe's hair and do his make-up,

10

he took her phone and deleted most of the text messages that he had sent to her.  Mr. Doe uses more than one cell phone, and sometimes would use different "names" and email addresses to communicate with Ms. Roe.  He would tell Ms. Roe ahead of time that it would be him sending her communications, under a different name.  For example, in 2019 he texted her to use a certain email address with a woman's name[10]:

> "It will come back to you as [woman's first name] [woman's last name]
>
> but that is me [smiley face emoji]."

Although Mr. Doe thought he deleted everything on Ms. Roe's phone, he did not, and some texts remain, including those in which he encouraged Ms. Roe to speak in a sexualized manner to him, such as this message referring to his "huge stick":



---

[10]   Because the woman's name he used is that of an employee, Ms. Roe has not included it here but can provide it to the Court *in camera*.

Based on the information set forth above, which is a sampling of some, but not all allegations by Ms. Roe, it is obvious why Mr. Doe resorted to such a drastic measure as filing the abusive declaratory judgment act complaint herein.  Mr. Doe is desperate to prevent his millions of fans from learning about the horrific things he has said and done to a junior female employee who did nothing to deserve such treatment.  The exceptions to Rule 10(a), however, do not exist to protect plaintiffs such as Mr. Doe.  Rather, they were developed to protect people such as Ms. Roe who will be victimized again should Mr. Doe be allowed to proceed under a pseudonym in this action.[11]

## ARGUMENT

### I.    Fifth Circuit Standard for Use of Pseudonym

Under well-settled Fifth Circuit precedent, Mr. Doe's motion must be denied.  First, the Fifth Circuit "heavily disfavor[s] sealing information placed in the judicial record."  *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519-20 (5th Cir.  2022).  Second, the Circuit Court also disfavors pseudonymity requests because there is a constitutional basis for disclosing the identities of parties.  *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579-580 n.17  (1980).  In its seminal decision on the subject, *Doe v. Stegall*, the Fifth Circuit identified three factors courts may consider in determining whether a party can proceed under a pseudonym: (1) whether the plaintiff is challenging governmental activity; (2) whether the case requires the disclosure of information that is of the utmost intimacy; and (3) whether the case may result in the admission of the plaintiff's intention to engage in illegal conduct.  *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).  The Circuit Court specified that there is "no hard and fast formula for ascertaining whether a party may

---

[11]    Although Ms. Roe believes that her name warrants protection and that ultimately the California court should decide that issue, she is willing to proceed using her name here if this Court believes that is necessary in denying Plaintiff's motion.

sue anonymously," and "[t]he decision requires a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Id.* at 186. In this action, Mr. Doe should not be permitted to proceed under a pseudonym or to file any materials under seal because he does not come close to the "exceptional characteristics" required to overcome the presumption of openness. *Id.* at 185.

## II.    No Court Has Granted Anonymity to a Party Accusing a Sexual Assault Litigant of <u>Defamation</u>

Before analyzing Mr. Doe's request pursuant to *Doe v. Stegall*, it is important to note that Defendant's diligent search of all reported decisions turned up not a single case in which a court in this District permitted a party being accused of a sexual assault to proceed under a pseudonym in connection with affirmative claims against his accuser. If this Court were to permit Mr. Doe to proceed anonymously, not only would it be the first federal court to permit an alleged sexual predator to do so, it would also be sending a very clear message to other wealthy predators that they too could use their wealth and resources to hire a lawyer to rush to the courthouse and protect their anonymity. Obviously, this secrecy would protect the alleged predator from other victims coming forward, which is often the case. Not surprisingly, federal district courts in other jurisdictions similarly were unable to locate decisions with this result, including outside of their own jurisdictions. For example, in *Roe v. Does 1-11*, where the court denied the request to proceed under a pseudonym, the court reasoned as follows:

> The Court finds it highly persuasive that Plaintiff fails to and is unable to cite a single case in which a plaintiff, suing for defamation and alleging he was falsely accused of sexual assault, was allowed to proceed anonymously against the victim of the purported assault.

2020 WL 6152174, at *6 (E.D.N.Y. Oct 14, 2020). Similarly, in *Doe v. Doe*, 649 F. Supp. 3d 136 (E.D.N.C.), *aff'd*, 85 F.4th 206 (4th Cir. 2023), the Fourth Circuit upheld a district court's decision

13

analogous to the decision in *Roe v. Does 1-11*.  In *Doe v. Doe*, the plaintiff brought defamation claims because he said the defendants, one of whom was the father of a young woman plaintiff had sexually assaulted, "falsely" told people at his university that he had committed sexual assault. The plaintiff argued that he needed to proceed under a pseudonym "in order to preserve his privacy in a matter that is sensitive and highly personal."  649 F. Supp. 3d at 139.  Like Mr. Doe herein, the plaintiff said that even "false" allegations of sexual misconduct would "tarnish his reputation." *Id.* at 140.  The court was unconvinced.  It denied the motion and held that "concerns about the openness of proceedings weigh strongly against permitting plaintiff to proceed pseudonymously in this action."  *Id.* at 142.

When a Colorado district court addressed the same issue, it also denied the plaintiff's motion to use a pseudonym.  In *Doe v. Roe*, 2023 WL 4562543 *4 (D. Colo. 2023), the plaintiff alleged a claim of defamation after the defendant had told fraternity members that the plaintiff had been "kicked out of [his prior university] for rape and stalking."  After reviewing the relevant factors used in the Tenth Circuit, the court determined that the pseudonym motion could not be granted because "exceptional circumstances, such as cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity," were not present.  *Id.* at *2 (internal citations and quotations omitted).  Like the decisions in *Roe v. Does 1-11, supra,* and *Doe v. Doe*, *supra,* the court denied the request and ordered the plaintiff to either dismiss his claims or proceed under his name.

## III.   **Application of *Stegall* Factors**

As listed above, in *Stegall*, the Fifth Circuit gave three examples of the characteristics that would favor pseudonymity: (1) plaintiffs seeking anonymity were suing to challenge governmental

14

activity; (2) prosecution of the suit compelled plaintiffs to disclose information of the utmost intimacy; and (3) plaintiffs were compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution.  For example, in *Doe v. Hood*, 2017 WL 2408196 (S.D. Miss. 2017), the plaintiffs challenged their mandatory registration as sex offenders after being convicted of violating an "Unnatural Intercourse" statute.  The court applied the three *Stegall* factors to determine whether plaintiffs could proceed under pseudonyms.  *Id.* at *1-2.  It held that the first *Stegall* factor was satisfied simply because the case assessed the constitutionality of state action. *Id.* at *2.  Next, the court found the second factor weighed in favor of pseudonymity because the plaintiffs, by filing the complaint, were "required to reveal information concerning private, consensual sexual conduct common to a homosexual lifestyle."  *Id.*  It noted that the Fifth Circuit had already established that homosexuality was a matter of a "highly personal and sensitive nature."  *Id.*  Along with the intent to engage in criminal conduct, the court in *Hood* noted that the third *Stegall* factor covered the plaintiffs who, "by filing suit, made revelations about their personal ... practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior."  *Hood*, at *3 (quoting *Stegall*, 653 F.2d at 186).  The *Hood* court reasoned that gay people had "suffered through a well-documented history of condemnation and indignity," and that the allegations made in the complaint were reasonably likely to subject the plaintiffs to harassment and retribution should their identities be made public.  *Id.* at *3.  The court held that this history of condemnation, along with the fact that "[m]embership on a sex offender registry has also been shown to *garner hatred and even deadly violence*," was adequate evidence of the "opprobrium" the plaintiffs would be subject to, sufficient to grant the motion to proceed under a pseudonym.  *Id.* (emphasis added).

## IV.     Mr. Doe Does Not Meet the *Stegall* Factors

Mr. Doe improperly claims that this case demands the disclosure of information of the utmost intimacy but at the same time is a "wholly untrue" extortion attempt.  Dkt. No. 5 at 3, 6.  Mr. Doe cannot have it both ways.  If, as he claims, Ms. Roe's claims were fabricated, then there would not be any intimate information to disclose.  Nevertheless, Mr. Doe repeatedly states that the backlash he would endure if required to litigate under his own name is enormous.  *Id.* at 1.  If any party would be subject to retaliation and litigation due to this action, it is *Ms. Roe*.  *See* Jayne S. Ressler, *Anonymous Plaintiffs and Sexual Misconduct*, 50 Seton Hall L. Rev. 955, 972-74 (2020) (detailing how the "strong risk of being labeled a liar" dissuades sexual misconduct victims from speaking out).  Mr. Doe misapplies the Fifth Circuit's test and makes vague, conclusory arguments that his reputation would be irreparably damaged, but courts have unequivocally rejected this kind of reasoning: "the Court finds that Plaintiff has not demonstrated any grounds for anonymity other than the risk of embarrassment or reputational damage."  *DL v. JS*, No. 23 Civ. 1122, 2023 WL 8102409, at *3 (W.D. Tex. Nov. 21, 2023), *see also Doe v. Doe*, 649 F. Supp. 3d at 141 ("It would be fundamentally unfair for plaintiff to be able to 'clear his name' and wield a potential [judgment] against [defendant] to his advantage but hide under a shield of anonymity if unsuccessful."); *Latinos for Trump v. Sessions*, 2021 WL 4302535, at *3 n.1 (W.D. Tex. Aug. 20, 2021), *report and recommendation adopted*, 2021 WL 4302536 (W.D. Tex. Sept. 21, 2021) ("further evidence of a credible threat [to the Plaintiff] beyond [a] conclusory allegation" is needed to proceed anonymously).

Although the Fifth Circuit has made clear that the factors are flexible, no additional consideration exists here that merits consideration in the Court's analysis.  Mr. Doe attempts to persuade the Court he should be allowed to proceed under a pseudonym by suggesting that his

filing is merely preventative.  Dkt. No. 5 at 3.  But proactivity is not a valid reason to proceed pseudonymously.  Unsurprisingly Mr. Doe provides no case law to support this contention.  The fact that he filed his lawsuit to get ahead of Ms. Roe's own complaint is irrelevant to the question of pseudonymity, and under his facts, demonstrates that the only person with grounds for a pseudonym request is Ms. Roe.

To bring this motion, Mr. Doe was forced to minimize the established principle that allowing parties to proceed under a pseudonym is the exception, not the rule.  *See Stegall*, 653 F.2d at 185 ("[t]he task before us in this case is to decide when the normal practice of disclosing the parties' identities yields to a policy of protecting privacy in a very private matter").  Indeed, as precedent in support, Mr. Doe offers the three *Stegall* factors and mere "generalized concerns" that he would suffer "irreparable harm to his reputation, family, career and livelihood."  Dkt. No. 5 at 3.  In fact, the very case Mr. Doe relies upon in chief support of his motion, is actually a decision that supports denial of his motion.  Specifically, in *Sealed Appellant v. Sealed Appellee*, 2024 WL 980494, at *2 (5th Cir. 2024), the Fifth Circuit wrote, "[o]f course, courts may not seal information merely because it could 'lead to a litigant's embarrassment.'"  Plaintiff's celebrity status is no justification for special treatment.

A.     ***Stegall* Factors One and Two Weigh Against Pseudonymity**

The first *Stegall* factor is inapplicable, a request for anonymity when the lawsuit challenges government activity.  Ms. Roe is a private citizen, and Mr. Doe has made no challenge to government activity.  Nevertheless, his motion relies on cases where this factor was a proper consideration.  The second factor asks whether the case requires the disclosure of information that is "of the utmost intimacy."  *See, e.g.*, *Doe Williams v. Williams*, No. 24 Civ. 165 (DPJ) (ASH), 2024 WL 2805642 (S.D. Miss. May 31, 2024) (pseudonym allowed where female plaintiff was

surreptitiously recorded having sex with another woman and said recording was disseminated without the plaintiff's consent); *Doe v. Jackson Nat. Life Ins. Co.*, 944 F. Supp. 488, 497 (S.D. Miss. 1995), *aff'd sub nom. Deramus v. Jackson Nat. Life Ins. Co.*, 92 F.3d 274 (5th Cir. 1996) (pseudonym allowed where case required disclosure of plaintiff's husband's HIV-positive status); *Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*, No. Civ. 22-00338 (BAJ) (SDJ), 2022 WL 17070549 (M.D. La. Nov. 17, 2022) (pseudonym allowed where female plaintiff suing public university was sexually assaulted); *Doe v. Trustees of Socorro Indep. Sch. Dist.*, 2018 WL 11471569 (W.D. Tex. June 25, 2018) (pseudonym allowed where female plaintiff suing public school district was sexual assault victim).

Understandably, this factor is most commonly weighed in favor of anonymity where a plaintiff has brought allegations of sexual misconduct against a defendant.  No cases exist to support Mr. Doe's factual situation, and he therefore relies on precedent that is inapplicable here. For example, he relies on *Sealed Appellant*, a case in which the plaintiff alleged that the defendant had harassed her and her family, including by posting sexually explicit images of her on the internet.  2024 WL 980494, at *1.  Mr. Doe's other supporting cases are lawsuits brought against governmental entities where the plaintiff did not contest the fact that sexual relations between the parties occurred.  *Doe v. Univ. of Mississippi*, No. 18 Civ. 138, 2018 WL 1703013, at *1 (S.D. Miss. Apr. 6, 2018) (hereinafter *Doe I*); *Doe v. Univ. of Mississippi*, No. 21 Civ. 201 (DPJ) (FKB), 2021 WL 6752261, at *1 (S.D. Miss. Apr. 14, 2021) (hereinafter *Doe II*).  In both of these cases, the plaintiffs were able to satisfy *Stegall* factors one and two.  The issues in those cases were whether the sexual conduct was consensual.  In contrast, Mr. Doe alleges that Ms. Roe's legal claims are entirely false.  Thus, it is illogical to argue that he would be compelled to disclose "information of the utmost intimacy."  Under *Stegall* factors one and two, Mr. Doe cannot meet

his burden of proving that the presumption of openness in judicial proceedings should be overcome.

As noted *supra*, the rare cases where a male plaintiff sues for defamation on grounds that he was falsely accused of sexual assault have *all* resulted in denials of the accompanying motion to proceed pseudonymously.  This motion is no different.  As mentioned, in *Doe v. Doe*, 649 F. Supp. 3d 136 (E.D.N.C.), the plaintiff alleged that the defendants defamed him by making "false claims" of sexual assault to his university and third parties, and that he needed to proceed under a pseudonym "in order to preserve his privacy in a matter that is sensitive and highly personal." *Doe v. Doe*, 649 F. Supp. 3d at 139.  Like Mr. Doe, the plaintiff in *Doe v. Doe*, argued that mere allegations of sexual misconduct, even if demonstrably false, would "tarnish his reputation." *Id.* at 140.  The court was unconvinced, and denied the motion, holding that "[u]ltimately, the *James* factors and concerns about the openness of proceedings weigh strongly against permitting plaintiff to proceed pseudonymously in this action." *Id.* at 142.  Although the Fourth Circuit uses a slightly different legal standard than the Fifth Circuit, the court considered nearly identical arguments made by Mr. Doe.  On appeal, the Fourth Circuit affirmed, finding that vague assertions of harm to reputation were not enough to strip the public of its right to know the identities of litigants:

> The district court held that extraordinary circumstances that would warrant pseudonymity are not present here.  It recognized that Appellant had argued "there is no public interest in the public learning his identity or the identities of others," but noted that Appellant had "fail[ed] to address the risk that pseudonymous lawsuits have in eroding public access to proceedings."  Appellant similarly argues on appeal that the crucial interests served by open judicial proceedings are not compromised by allowing a party to proceed anonymously.  **We have held just the opposite**: **Pseudonymous litigation undermines the public's right of access to judicial proceedings**.  The public has an interest in knowing the names of the litigants and disclosing the parties' identities furthers openness of judicial proceedings.

19

*Doe v. Doe*, 85 F.4th 206, 217 (4th Cir. 2023) (citations omitted) (emphasis added).

In *Doe v. Roe*, *supra*, the plaintiff alleged defamation after the defendant told people that plaintiff had been "kicked out of [his prior university] for rape and stalking."  In the Tenth Circuit, like the Fifth Circuit, "exceptional circumstances, such as cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity," are necessary to justify the use of a pseudonym.  *Id.* at *2.  The court was unmoved by the plaintiff's "speculat[ion] that denial of pseudonymity will result in 'inevitable public attention,' which will make physical harm likely."  *Id.* at 3.  The court held that the "exceptional circumstances" necessary to justify the use of a pseudonym were not present.  *Id.* at 4.  Here, Mr. Doe failed to offer a single reason that physical harm is likely.

Within the Fifth Circuit, the case most on point is *DL v. JS*, No. 23 Civ. 1122 (RP) 2023 WL 8102409 (W.D. Tex. Nov. 21, 2023).  In *DL v. JS*, a male plaintiff who prior to filing had been accused of sexual assault, asserted defamation claims against the father of the sexual assault victim. Plaintiff alleged that the father had told fraternities and sororities at the plaintiff's college that he had sexually assaulted his daughter in high school.  Denying the motion to proceed under a pseudonym, the *DL* court distinguished the case from others where the plaintiff was the alleged victim of sexual misconduct – "[h]ere, Plaintiff is not a victim of sexual assault."  *Id.* at 2.  Next, the court correctly recognized that the second *Stegall* factor was designed to protect victims of sexual assault, not plaintiffs bringing defamation claims:

> Further, the Court notes that Plaintiff does not identify any case law where a plaintiff bringing claims of libel or defamation was allowed to proceed using pseudonyms against the purported victim of the sexual assault.

*DL v. JS* at *2 (citing *Roe v. Does 1-11* at *6).  There was no evidence that the plaintiff would suffer physical harm were his identity revealed.  *Id.*  The same is true here.

**B.    *Stegall* Factor Three**

The third *Stegall* factor weighs against granting Mr. Doe's motion.  First, Mr. Doe provides no facts to suggest that this case will result in the admission of his "intention to engage in illegal conduct."  Although the Fifth Circuit has historically expanded the third factor to ask whether revealing the plaintiff's identity would invite "extensive harassment" or "violent backlash," Mr. Doe fails to demonstrate this will happen.  Instead, he makes conclusory arguments that his "public image," the driver of his success and fame, is at risk.  This is unquestionably insufficient to warrant the use of a pseudonym.  *See Stegall* at 186 (holding that "[t]he threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity").  As is obvious, Mr. Doe grossly mischaracterizes the third *Stegall* factor.   In *Stegall*, the Fifth Circuit asked whether "the [plaintiff has], by filing suit, made revelations about [his] personal beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior."  *Id.*  Mr. Doe's Complaint invites no "opprobrium" towards himself.  It paints him as a victim of extortion.  Based on his narrative that Ms. Roe is a liar who is out to tarnish Plaintiff's reputation, the only person subject to potential shaming and harassment is Ms. Roe.  As reasoned by the court in *Doe v. Roe*:

> The Court also acknowledges that pseudonymity could potentially prejudice Defendant in light of her stated intention to litigate a counterclaim for sexual assault "using her own name so as to ensure that the larger and important issues raised by this case—including ensuring that survivors of sexual assault not lose their voice through shame or the threat of legal action—are advanced."  Indeed, unlike other cases, Plaintiff is not seeking to proceed pseudonymously so as to match his accuser's pseudonymous status.

*Id.* at 4 (internal citations omitted).

21

Finally, although Ms. Roe believes that she should be permitted to remain anonymous, especially given her prior expressed intent to proceed as "Jane Doe" in her California complaint given to Mr. Doe before he commenced this action, if the Court determines that the status of her name meaningfully impacts whether Plaintiff can proceed as a "Doe," Ms. Roe is willing to proceed and use her own name in this action. Simply no justification for Mr. Doe's request exists and his motion to proceed as "John Doe" should be denied.

## V.      Plaintiff's Request to File Under Seal or with Redactions Must be Denied

In the Fifth Circuit, courts use a non-exhaustive balancing test in deciding motions to file under seal: the public's interest in transparency is weighed against any interests favoring nondisclosure, which can include the parties' safety (*Doe v. Hood*, *supra* at *3), whether an unsealed record would reveal "confidential business information," (*North Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 204 (5th Cir. 2015)), or "where court files might have become a vehicle for improper purposes." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598 (1978).   Broad concerns about reputational damage are insufficient.   *Sealed Appellant*, at *2 (quoting *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)) ("courts may not **seal information** merely because it could lead to a litigant's embarrassment.").  Generally, sealing judicial records is "heavily disfavor[ed]."  *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th at 519.

Motions for blanket seals as suggested by Mr. Doe are held under even greater scrutiny: "[t]o determine whether a judicial record should be sealed, the court must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Sealed Appellant*, at *2.  Fifth Circuit courts have analyzed motions to file under seal or with redactions similarly to motions to proceed under a

pseudonym.  *See Sealed Appellant,* at *3 (noting that "[l]ike with sealing and redaction, the pseudonymity analysis requires the court to balance the private and public interests"); *Doe v. Hood*, at *2 (using pseudonymity analysis to address sealing question).  If a court finds that the use of a pseudonym is unwarranted, it follows that filing under seal would be as well.

Here, Mr. Doe provides nothing more than the same generalized concerns courts have summarily rejected.  He points to supposed abstract harms to his "good reputation, his business, and his relationships with family and friends."  Dkt. No. 5 at 7.  In sum, Mr. Doe fails to present anything tangible, yet still demands complete anonymity.  He baselessly claims that "[Ms. Roe] has shown she is likely to use public filings in this cases [sic] as a vehicle for improper purposes including to gratify private spire [sic] and promote public scandal."  *Id.* at 6-7 (internal citations and quotations omitted).  But he provides no evidence to support this brazen statement.  Informing opposing counsel of a client's intent to file a lawsuit is not improper by any means.  Finally, Mr. Doe ignores clear precedent by claiming that "there is little if any legitimate public interest in the disclosure of Plaintiff's and Defendant's identities."  *Id.* at 8.  This is wrong.  Recently, the Fifth Circuit clarified the "nature and extent of the public's right to judicial records" at length:

> Judicial records belong to the American people; they are public, not private, documents. And the public's right of access to judicial records is a fundamental element of the rule of law. The public has an interest in transparent court proceedings that is independent of the parties' interests.  This right serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness. Accordingly, we heavily disfavor sealing information placed in the judicial record.

*June Med. Servs., L.L.C. v. Phillips*, 22 F.4th at 519–20  (internal quotes and citations omitted).

Mr. Doe seeks to minimize the public's legitimate interest in knowing his identity by claiming that it "would be nothing more than a prurient curiosity to uncover untrue, salacious gossip."  Dkt. No.

5 at 8.  His characterization is a feeble attempt to work around the fact that he has no countervailing interest that comes close to outweighing the public's right to transparent court proceedings. Accordingly, no basis under Fifth Circuit law exists to grant Mr. Doe's request to seal the record or redact publicly filed documents to conceal the identities of he and Ms. Roe.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiff's request for leave to file his complaint under pseudonym and to file under seal or redact any materials that would reveal the parties' identities.   In addition, Ms. Roe respectfully requests that she may commence her California action as she intended to do, and use Mr. Doe's name, absent objection from this Honorable Court.

Dated: October 1, 2024
       New York, New York                 Respectfully Submitted,

**WATSON & NORRIS, PLLC**

By:  /s/Louis H. Watson, Jr.
      Louis H. Watson, Jr. (MSB#9053)

4209 Lakeland Drive #365
Flowood, MS 39232-9212
Phone: (601) 968-0000
Fascimile: (601) 968-0010
louis@watsonnorris.com

**WIGDOR LLP**

By:  /s/Douglas H. Wigdor
     Douglas H. Wigdor (*pro hac vice*)
     Jeanne M. Christensen (*pro hac vice*)

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
jchristensen@wigdorlaw.com

**HB ADVOCATES PLLC**

By:   /s/Hayley Hanna Baker
      Hayley Hanna Baker (*pro hac vice*)

1831 12th Ave. S.
Nashville, TN 37203
Telephone: (615) 505-3260
Email: hbaker@hb-advocates.com

*Counsel for Defendant*

25

**<u>CERTIFICATE OF SERVICE</u>**

I, DOUGLAS H. WIGDOR, attorney for Defendant, do hereby certify that I have this day filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing or mailed, via United States Mail, postage prepaid, to all counsel of record.

THIS, the 1st day of October, 2024.

<u>/s/ Douglas H. Wigdor</u>
Douglas H. Wigdor